## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| FONTAINE TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:12-cv-02309-JPM-cgc |
| | ) | |
| MARK THOMAS, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
## AND
## ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Before the Court is Defendant Mark Thomas' ("Defendant" or "Thomas") Motion for Partial Summary Judgment as to Plaintiff's Lanham Act Claim (ECF No. 110),[1] filed November 16, 2012, and Plaintiff Fontaine Taylor's ("Plaintiff" or "Taylor") Motion for Partial Summary Judgment as to Ownership of the Service Mark (ECF No. 112), filed November 16, 2012.  On December 14, 2012, Plaintiff filed a Response in opposition to Defendant's Motion and Defendant filed a Response in opposition to Plaintiff's Motion.  (ECF No. 119; ECF No. 120.)  The parties each filed a Reply on January 4, 2013.  (ECF No. 131; ECF No. 132.)

---

[1] On November 20, 2012, Defendant filed a "Consent Motion To File a Supplemental Memorandum of Facts and Law and To Extend Page Limitations and Memorandum in Support."  (ECF No. 115.)  Defendant wished to file a supplemental memorandum because he did not properly cite to the Record in his Separate Statement of Material Facts (ECF No. 110-1).  (ECF No. 115 ¶ 1.)  The Court granted Defendant's Motion on November 21, 2012.  (ECF No. 117.)  Defendant's updated supplemental memorandum, filed November 30, 2012 (ECF No. 118), will be cited in support of his Motion for Partial Summary Judgment in place of his supplemental memorandum filed November 16, 2012 (ECF No. 110-1).

For the following reasons, Defendant's Motion for Partial Summary Judgment as to Plaintiff's Lanham Act Claim is DENIED; and Plaintiff's Motion for Partial Summary Judgment as to Ownership of the Service Mark is GRANTED.

## I.   BACKGROUND

This case concerns a dispute over the ownership of a service mark used by both Plaintiff and Defendant in advertising their real estate services.

The service mark at issue in this case consists of (1) a solid blue silhouette of a city skyline on a white background, and (2) a solid blue silhouette of a city skyline on a white background with words on the white background appearing in red lettering (the "Service Mark").

**A. Procedural Background**

On April 20, 2012, Plaintiff filed a Complaint against Thomas, Harold Blockman, MEM-01, LLC, and Keller Williams Realty, Inc. (collectively "Defendants"), seeking a temporary restraining order against Defendants for the use of the service mark; alleging that Defendants engaged in tortuous interference with her prospective business relationships; alleging that Defendants had been unjustly enriched by the use of her service mark; and alleging that Defendants violated the Lanham Act, 15 U.S.C. § 1051, Tennessee common law, and the Tennessee

Consumer Protection Act ("TCPA"), Tenn. Code Ann. § 47-18-101. (ECF No. 1.)

On April 26, 2012, Plaintiff filed a Motion for Temporary Restraining Order and Preliminary Injunction to restrain the infringement of Plaintiff's service mark by Defendants. (ECF No. 18.) Defendants filed a Response in opposition to Plaintiff's Motion on May 3, 2012. (ECF No. 35.) On May 4, 2012, the Court held a hearing on Plaintiff's Motion and granted Plaintiff's Motion for Temporary Restraining Order. (ECF No. 38.) On May 7, 2012, the Court issued an Order granting Plaintiff's Motion for Preliminary Injunction. (ECF No. 37.)

On May 18, 2012, Plaintiff filed a Notice of Settlement with Defendants Harold Blockman, MEM-01, LLC, and Keller Williams Realty, Inc. (ECF No. 45.) The Court issued an Order on June 8, 2012, dismissing Harold Blockman, MEM-01, LLC, and Keller Williams Realty, Inc., as Defendants. (ECF No. 58.)

On May 17, 2012, Plaintiff filed a Motion for Sanctions and To Hold Defendant Thomas in Civil Contempt based on Thomas' continued use of the service mark in violation of the preliminary injunction. (ECF No. 43.) Defendant Thomas filed a Response in opposition on May 29, 2012. (ECF No. 50.) The Court granted Plaintiff's Motion To Hold Defendant Thomas in Civil Contempt in an Order issued on June 1, 2012. (ECF No. 55.) The Court held a hearing on the Motion for Sanctions

3

on June 1, 2012, and granted that Motion.  (ECF No. 56.)  On
July 17, 2012, the Court issued an Order granting Plaintiff
attorney's fees and expenses related to the filing of
Plaintiff's Motion To Hold Defendant Thomas in Civil Contempt.
(ECF No. 68.)

On June 13, 2012, Thomas filed a Motion To Dismiss two of
Plaintiff's claims.  (ECF No. 62.)  Plaintiff responded in
opposition on July 11, 2012.  (ECF No. 67.)  On August 7, 2012,
the Court denied Thomas' Motion To Dismiss.

On June 22, 2012, Plaintiff filed an Amended Complaint,
including a claim for breach of contract against dismissed
defendants Harold Blockman and MEM-01, LLC, based on a breach of
the settlement agreement, and a claim against Thomas for his
violation of the preliminary injunction.  (ECF No. 64.)  On July
23, 2012, defendants MEM-01, LLC, and Harold Blockman filed an
Answer to Plaintiff's Amended Complaint.  (ECF No. 69.)
Defendant Thomas filed an Answer to Plaintiff's Amended
Complaint and verified counterclaim against Plaintiff.  (ECF
No. 73.)  On September 19, 2012, Plaintiff filed an Answer to
Thomas' counterclaim.  (ECF No. 81.)

On November 16, 2012, Thomas filed a Motion for Partial
Summary Judgment on Plaintiff's Lanham Act Claim (ECF No. 110),
and Plaintiff filed a Motion for Partial Summary Judgment as to
ownership of the service mark (ECF No. 112.)  Plaintiff filed a

Response in opposition to Thomas' Motion, and Thomas filed a Response in opposition to Plaintiff's Motion on December 14, 2012. (ECF No. 119; ECF No. 120.)

On December 18, 2012, Plaintiff filed a Notice of Settlement with defendants MEM-01, LLC, and Harold Blockman. (ECF No. 123.) On December 19, 2012, the Court issued an Order dismissing defendants MEM-01, LLC, and Harold Blockman. (ECF No. 124.) The only remaining defendant in this action is Thomas.

**B. Factual Background**

The following material facts are undisputed unless otherwise noted.

The Service Mark at issue in this case consists of (1) a solid blue silhouette of a city skyline on a white background, and (2) a solid blue silhouette of a city skyline on a white background with words on the white background appearing in red lettering. (Def.'s Resp. Pl.'s Statement Undisputed Facts, ECF No. 119-2, ¶ 1.) The Service Mark was never registered. (Pl.'s Resp. Def.'s Statement Undisputed Facts, ECF No. 121, ¶ 16.)

In 1951, Coleman-Etter, Inc. ("Coleman-Etter"), a real estate brokerage firm founded that same year by Majorie Coleman and Fran Etter, began using the Service Mark in the performance of its real-estate services. (ECF No. 119-2 ¶¶ 2-4.) Coleman-

Etter was the only Memphis real estate firm to use such a symbol.  (Id. ¶ 5.)

In 1985, Fontaine, Inc., purchased a one-third interest in Coleman-Etter which began using the name Coleman-Etter-Fontaine. (ECF No. 119-2 ¶ 6.)  Fontaine, Inc., is a corporation solely owned by Plaintiff.  (Id.)

In 1987, Fontaine, Inc., purchased the remaining interest in Coleman-Etter.  (Id. ¶ 8.)  All of Coleman-Etter's intellectual property, including the Service Mark became the property of Fontaine, Inc., which was later renamed Coleman-Etter-Fontaine, Inc. ("Coleman-Etter-Fontaine").  (Id. ¶¶ 9-10; ECF No. 121 ¶ 20.)

From November 1, 1987, until the dissolution of Coleman-Etter-Fontaine on August 12, 2012, Plaintiff remained the sole owner, sole shareholder, and primary agent of Coleman-Etter-Fontaine.  (ECF No. 119-2 ¶ 15.)  Plaintiff had control over all the agents and advertising associated with Coleman-Etter-Fontaine including the use of the Service Mark.  (Id. ¶¶ 16-17.) All real estate agents with Coleman-Etter-Fontaine, including Thomas, were required to use yard signs containing the Service Mark.  (Id. ¶¶ 12-13.)

In October 2009, Plaintiff launched the redesigned website of Coleman-Etter-Fontaine, www.cef-realtors.com, which made use of the Service Mark in both pictures of Coleman-Etter-Fontaine's

6

yard signs and as a blue skyline silhouette at the bottom of the page.  (Id. ¶¶ 19-20.)  The public associated the Service Mark with Coleman-Etter-Fontaine's residential real estate services. (Id. ¶ 9.)  The yard sign was an important asset and identifier for Coleman-Etter-Fontaine.  (ECF No. 121 ¶ 15.)

In late 2010, Plaintiff decided that she no longer wanted to be a principle broker or run her own business.  (ECF No. 119-2 ¶ 23; ECF No. 121 ¶ 25.)  Plaintiff did not sell Coleman-Etter-Fontaine because she did not want anyone other than herself to own the business.  (ECF No. 121 ¶ 26.)

In January 2011, Plaintiff reached an agreement with Crye-Leike Realtors, Inc. ("Crye-Leike"), to join Crye-Leike's East Memphis Office as a real-estate agent.  (ECF No. 119-2 ¶ 24.) The agreement provided that the "Coleman-Etter-Fontaine" name, service marks, and goodwill would remain Plaintiff's property. (Id. ¶ 25.)  No one at Crye-Leike may use the Service Mark without Plaintiff's permission.  (Id. ¶ 49.)  Plaintiff expressed to Crye-Leike management an interest in using marketing materials other than those Crye-Leike marketing made available for Crye-Leike real-estate agents.  (Id. ¶ 56.)  In an email sent by General Manager Steve Brown to Plaintiff on February 7, 2011, Brown told Plaintiff that she was not allowed to use her personal marks on her Crye-Leike yard signs.  (Id. ¶ 58.)

On February 22, 2011, Plaintiff entered into an independent-contractor agreement with Crye-Leike.  (Id. ¶ 27.) The independent-contractor agreement did not supersede the January agreement.  (Id. ¶ 28.)

On February 4, 2011, an article published in the Memphis Daily News announced that Coleman-Etter-Fontaine and Crye-Leike were "merging"; that Coleman-Etter-Fontaine was closing; and that "Coleman-Etter, Fontaine's white and blue colonial signs [would] gradually be replaced with Crye-Leike's familiar red and white."  (ECF No. 119-2 ¶ 35; ECF No. 121 ¶¶ 47-48.)

On March 11, 2011, Plaintiff surrendered Coleman-Etter-Fontaine's license to the Tennessee Real Estate Commission. (ECF No. 119-2 ¶ 34; Ex. D, ECF No. 109-1, at 94.)[2]

In February 2011, after her move to Crye-Leike, Plaintiff started a personal website, www.TheFontaines.com, to market her and her daughter's services as Crye-Leike agents.  (ECF No. 119-2 ¶¶ 38, 40.)  Persons visiting www.cef-realtors.com were directed to www.TheFontaines.com.  (Id. ¶ 41.)  Plaintiff's website contained the same content as that of the Coleman-Etter-Fontaine website, www.cef-realtors.com, including the Service Mark - the blue skyline against a white background - at the bottom of the page.  (Id. ¶¶ 38-39.)  This website has been

---

[2] Defendant disputes this fact.  (ECF No. 119-2 ¶ 34.)  The Court, however, finds that the materials cited by Defendant do not contradict this statement of fact.  (See ECF No. 98-2 at 15-16.)

active at all times that Plaintiff has been a sales associate with Crye-Leike. (Id. ¶ 48.) The website provides general listing information, educates consumers on Memphis, and provides contact information for Plaintiff and her daughter, Fontaine Brown. (ECF No. 121 ¶ 79.) A 2010 report by the National Association of Realtors Profile of Home Buyers and Sellers states that approximately 90% of home buyers use the Internet to search for homes and that the first step for more than one-third of home buyers is to look online for properties. (ECF No. 119-2 ¶ 22.)

In the winter of 2011-2012, Stephanie Threlkeld worked with Plaintiff to develop advertising "mock ups" that included the Service Mark. (Id. ¶ 45.)

In March 2012, Plaintiff saw one of Mark Thomas' yard signs which incorporated a blue skyline against a white background with red lettering. (Id. ¶ 60.)

In April 2012, Plaintiff began using a modified Crye-Leike yard sign with the blue skyline, white background, and red lettering. (Id. ¶ 63.) She did not seek permission from Crye-Leike management before altering the sign. (Id. ¶ 64.) After seeing the sign, Mr. Leike agreed to let Plaintiff use the modified sign as a realtor associated with Crye-Leike. (Id. ¶ 66.)

In April 2012, Plaintiff's website, www.TheFontaines.com, incorporated the yard sign with the Service Mark at the top of the webpage. (Id. ¶ 43.)

On April 10, 2012, Plaintiff executed a written assignment of all of Coleman-Etter-Fontaine intellectual property, including its service marks and goodwill, to herself. (Id. ¶ 52.)

On June 20, 2012, Plaintiff, as the sole shareholder and director of Coleman-Etter-Fontaine, executed a consent and authorization ratifying the previous assignment of Coleman-Etter-Fontaine's intellectual property, including its service marks and goodwill, to herself. (Id. ¶ 53.)

On August 12, 2012, Coleman-Etter-Fontaine was administratively dissolved. (Id. ¶ 15.)

## II.   STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In this inquiry, "all facts, including inferences, are viewed in the light most favorable to the nonmoving party." Rosebrough v. Buckeye Valley High Sch., 690 F.3d 427, 431 (6th

Cir. 2012); see also Matsushita Elec. Indus. Co. v. Zenith Radio
Corp., 475 U.S. 574, 587 (1986).

     The nonmoving party, when confronted with a properly
supported motion for summary judgment, must "cite[] to
particular parts of materials in the record or show[] that the
materials cited do not establish the absence or presence of a
genuine dispute, or that an adverse party cannot produce
admissible evidence to support the fact." Bruederle v.
Louisville Metro Gov't, 687 F.3d 771, 776 (6th Cir. 2012)
(alteration in original) (internal quotation marks omitted)
(citing Fed. R. Civ. P. 56(c)(1)); see also Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 256-57 (1986).  "The central issue is
whether the evidence presents a sufficient disagreement to
require submission to a jury or whether it is so one-sided that
one party must prevail as a matter of law." Rosebrough, 690
F.3d at 430-31 (citation omitted) (internal quotation marks
omitted).  Thus, a "mere scintilla of evidence . . . will be
insufficient for [the] claim to survive summary judgment."
Donald v. Sybra, 667 F.3d 757, 760-61 (6th Cir. 2012) (quoting
Anderson, 477 U.S. at 251).

     In this case, both Plaintiff and Defendant have moved for
partial summary judgment.  In cases where the parties have filed
cross-motions for summary judgment, "the court must evaluate
each party's motion on its own merits, taking care in each

instance to draw all reasonable inferences against the party whose motion is under consideration." <u>B.F. Goodrich Co. v. U.S. Filter Corp.</u>, 245 F.3d 587, 592 (6th Cir. 2001) (quoting <u>Taft Broad. Co. v. United States</u>, 929 F.2d 240, 248 (6th Cir. 1991)) (internal quotation marks omitted).

### III. ANALYSIS

Plaintiff has moved for summary judgment on the issue of ownership of the Service Mark. Defendant has moved for summary judgment on the issue of whether Plaintiff can sustain a Lanham Act claim against Defendant based on the ownership of the Service Mark.

**A. Ownership of the Service Mark**

Registration of a service mark is not necessary in order to confer ownership. Ownership rights of a service mark "flow only from prior appropriation and actual use in the market." <u>Allard Enters., Inc. v. Advanced Programming Res., Inc.</u>, 146 F.3d 350, 356 (6th Cir. 1998). Common law ownership of a service mark is established "by demonstrating that . . . use of the mark was deliberate and continuous, not sporadic, casual or transitory." <u>Circuit City Stores, Inc. v. CarMax, Inc.</u>, 165 F.3d 1047, 1054-55 (6th Cir. 1999) (citation omitted) (internal quotation marks omitted). The use of a service mark, however, need not be extensive or "result in deep market penetration or widespread recognition." <u>Allard</u>, 146 F.3d at 358.

In this case there is no dispute as to whether the Service Mark was owned by Coleman-Etter-Fontaine prior to February or March of 2011.  The dispute concerns if or when Plaintiff obtained ownership of the Service Mark from Coleman-Etter-Fontaine.

In order for Plaintiff to show that she is the owner of the Service Mark, Plaintiff must demonstrate that her alleged ownership rights are superior to Defendant's alleged ownership rights.  Plaintiff asserts that she is the owner of the Service Mark:  (1) by virtue of being the sole shareholder and owner of Coleman-Etter-Fontaine; and/or (2) by virtue of an implied assignment based on Plaintiff's continued use of the Service Mark for her own purposes, and by virtue of a written assignment executed by Plaintiff as the sole shareholder and owner of Coleman-Etter-Fontaine on April 10, 2012 and ratified on June 20, 2012.  (See ECF No. 112-1 at 13-18.)  Plaintiff's assertions are addressed in turn.

## 1. Ownership Based on Plaintiff's Status as Sole Shareholder and Owner of Coleman-Etter-Fontaine

Plaintiff asserts that, as the sole shareholder and owner of Coleman-Etter-Fontaine with control over the use of the Service Mark for twenty-five continuous years, she was the owner of all service marks at one time owned by Coleman-Etter-Fontaine.  (See Pl.'s Mot. Partial Summ. J., ECF No. 112, at

14.)   In support of this assertion, Plaintiff cites <u>McCarthy on</u>
<u>Trademarks and Unfair Competition</u>, which states that

> [i]f a corporation is using a mark, then a principle
> officer and shareholder is not the "owner." It is
> presumed, however, that a real person who owns *all* the
> stock of a corporation controls the corporation so
> that use of the mark by the corporation inures to the
> benefit of the real person, who is presumed to be the
> "owner" of the mark.

2 McCarthy on Trademarks and Unfair Competition § 16:36
(footnotes omitted) (hereinafter "McCarthy").

As Plaintiff notes, few cases have had the opportunity to
apply this presumption.  Plaintiff cites to an unpublished
opinion from the United States District Court for the Northern
District of Illinois which cites this particular section,
<u>Gaffrig Performance Industries v. Livorsi Marine, Inc.</u>, Nos. 99
C 7778, 99 C 7822, 2003 WL 23144859 (N.D. Ill. Dec. 22, 2012).
In <u>Gaffrig</u>, the court determined that the plaintiff, as the sole
shareholder of the company, and the person whose name formed the
basis of the trademarks at issue, became the owner of the
company's trademarks because the use of the trademarks inured to
his benefit.  <u>Id.</u> at *11.

Defendant asserts that construing trademark law to allow
for individual ownership based on sole-shareholder status would
conflict with Tennessee law governing corporations. (<u>See</u> Def.'s
Mem. of Facts & Law in Supp. of Def.'s Mot. Partial Summ. J.,
ECF No 110-1, at 15; Def.'s Resp. to Pl.'s Mot. Partial Summ.

J., ECF No. 119, at 6.)  Defendant cites Hadden v. City of Gatlinburg, 746 S.W.2d 687, 689 (Tenn. 1988), and Shelby Cnty. v. Barden, 527 S.W.2d 124, 130 (Tenn. 1975), in support of this proposition.

In Tennessee, "[e]ven if one stockholder holds all of the stock in a corporation, the corporation and that single stockholder remain 'distinct legal entities.'"  Rogers v. Louisville Land Co., 367 S.W.3d 196, 216 (Tenn. 2012) (quoting Hadden, 746 S.W.2d at 689).  "[W]here parties have deliberately undertaken to do business in corporate form, for tax purposes, accounting and other reasons, they must be held to the corporate form and they cannot shunt aside at their convenience legal entities and the legal aspects thereof."  Hadden, 746 S.W.2d at 690 (alteration in original) (quoting Barden, 527 S.W.2d at 130) (internal quotation marks omitted).  Since Tennessee law "respect[s] the separate legal status of a corporation and its shareholders," Tennessee courts are "equally reluctant to disregard corporateness to create liability as [they] are to disregard corporateness to remove liability."  Cambio Health Solutions, LLC v. Reardon, 213 S.W.3d 785, 790-91 (Tenn. 2006). The "corporate cloak" will only be "disregarded where used as a cover for fraud or illegality and the corporation and individual or individuals owning all its stock and assets will be treated as identical."  Fed. Deposit Ins. Corp. v. Allen, 584 F. Supp.

386, 397 (E.D. Tenn. 1984); see also CAO Holdings, Inc. v. Trost, 333 S.W.3d 73, 88 (Tenn. 2010) (noting that Tennessee courts have looked to Allen in determining whether "a corporation's separate legal identity should be ignored").

In order for the corporate veil to be pierced, a court must be convinced that "the separate corporate entity 'is a sham or a dummy' or that disregarding the separate corporate entity is 'necessary to accomplish justice.'" Trost, 333 S.W.3d at 88 (citation omitted).

In this case, there has been no evidence put forth by either party that Coleman-Etter-Fontaine was "a sham or a dummy" or that piercing the corporate veil would be "necessary to accomplish justice." The Court finds, as a matter of law, that Plaintiff cannot establish ownership of the Service Mark on the basis of her status as sole shareholder and owner of Coleman-Etter-Fontaine alone.

## 2. Ownership Based on Assignment of the Service Mark

Plaintiff argues that — even if she is not the owner of the Service Mark based upon her status as the sole shareholder and owner of Coleman-Etter-Fontaine — she is still the owner of the Service Mark based on an assignment from Coleman-Etter-Fontaine to herself. (See ECF No. 112 at 16-18.) Plaintiff asserts that she became the owner of all of Coleman-Etter-Fontaine's service marks as the result of an implied assignment which was

16

formalized by valid written agreement on April 10, 2012, and ratified on June 20, 2012.  (Id.)

Trademarks, like other property rights, may be assigned. See Tandy Corp. v. Malone & Hyde, Inc., 769 F.2d 362 (6th Cir. 1985); see also Restatement (Third) of Unfair Competition § 34; 3 McCarthy § 18:1.  In order for an assignment of a trademark to be valid, the assignment must include the business goodwill associated with the trademark and there must be continuity in the use of the mark.  See Matter of Roman Cleanser Co., 802 F.2d 207 (6th Cir. 1986); Restatement (Third) of Unfair Competition § 34.  An assignment in gross[3] or a break in the continuity of use of a trademark can result in abandonment of the mark.  See Restatement (Third) of Unfair Competition § 34; 3 McCarthy § 18:3.  An assignment need not be in writing to be valid.  See Doeblers' Penn. Hybrids, Inc. v. Doebler, 442 F.3d 812, 822 (3d Cir. 2006); see also Callmann on Unfair Competition, Trademarks and Monopolies § 20:63 (hereinafter "Callmann").

Defendant asserts that, as a result of the discontinuation of Coleman-Etter-Fontaine's business in February or March of 2011, the business' goodwill no longer existed, and thus, the Service Mark was abandoned and entered the public domain.  (ECF No. 118 at 17-30; ECF No. 119 at 13-15, 17-20.)  As a result,

---

[3] "A sale of a trademark divorced from its goodwill is characterized as an 'assignment in gross.'"  3 McCarthy § 18:3.

17

any assignment of the Service Mark to Plaintiff after the discontinuation of Coleman-Etter-Fontaine in March 2011 would have been a nullity.  (ECF No. 118 at 28-30.)

The Court need not reach the issue of whether the Service Mark entered the public domain after March 2011 because the Court finds that Plaintiff executed a valid implied assignment from Coleman-Etter-Fontaine to herself of all of Coleman-Etter-Fontaine's service marks and associated goodwill before March 2011.

As previously stated, an assignment of a service mark need not be in writing to be valid.  Where there is no written assignment, an assignment can be implied from conduct manifesting agreement.  See Doebler, 442 F.3d 812 at 822; TMT N. Am., Inc. v. Magic Touch GmbH, 124 F.3d 876, 884 (7th Cir. 1997); Seeburg Corp. v. AMR Pub., 80 F. Supp. 2d 723, 728 (W.D. Mich. 1999); see also Callmann § 20:63.  Strong evidence is required to demonstrate manifest agreement.  Doebler, 442 F.3d at 822.

Plaintiff asserts the following in support of her contention that her conduct manifested agreement of an implied assignment of Coleman-Etter-Fontaine's service marks:  in her agreement with Crye-Leike, she explicitly retained ownership of the service marks and the associated goodwill (see ECF No. 112-1 at 17; see also ECF No. 119-2 ¶ 25); use of the Service Mark was

controlled by Plaintiff alone (ECF No. 119-2 ¶ 49); Plaintiff continued to use the blue skyline in her personal website, www.TheFontaines.com, as a Crye-Leike agent and directed visitors from Coleman-Etter-Fontaine's website to her personal website (see ECF No. 122-1 at 17; see also ECF No. 119-2 ¶¶ 38-41); and Plaintiff used the Service Mark in other marketing materials and eventually on her yard signs for Crye-Leike (see ECF No. 122-1 at 17; see also ECF No. 119-2 ¶¶ 43, 45, 63). The conduct in using the Service Mark in conjunction with her real estate services as an agent for Crye-Leike began before Plaintiff surrendered Coleman-Etter-Fontaine's license to the Tennessee Real Estate Commission on March 11, 2011, and before Coleman-Etter-Fontaine was officially dissolved in August 2012. (ECF No. 121 ¶ 34; ECF No. 119-2 ¶ 15.)

Defendant contends that Plaintiff's assertions are insufficient to establish the strong evidence needed to demonstrate manifest agreement to an implied assignment. (ECF No. 119 at 10-13.) In support of this contention, Defendant states that the use of the blue skyline in Plaintiff's website was insignificant and constituted mere advertising rather than a "use in commerce" of the Service Mark. (Id. at 12.) Additionally, Defendant states that the lack of continuity between Coleman-Etter-Fontaine as a business and Plaintiff as a Crye-Leike realtor supports the argument that the alleged

19

implied assignment could not have been valid because the assignment would have been in gross (i.e., without the required goodwill). (Id.)

The Court finds that Plaintiff's aforementioned conduct constitutes sufficiently strong evidence under the circumstances to demonstrate manifested agreement as a matter of law. First, as the sole owner and shareholder of Coleman-Etter-Fontaine with exclusive control over all of Coleman-Etter-Fontaine's service marks, Plaintiff was the only one who could manifest agreement to the assignment of the Service Marks. Second, Plaintiff specifically maintained control over the Coleman-Etter-Fontaine name and service marks in her agreement with Crye-Leike. Third, there is sufficient continuity between the real estate services of Coleman-Etter-Fontaine and Plaintiff's real estate services. As the owner and sole shareholder of Coleman-Etter-Fontaine for twenty-five years, Plaintiff provided real estate services in primarily in East Memphis under her personal leadership and authority. After joining Crye-Leike, Plaintiff continued to use the Service Mark in conjunction with her real estate services in East Memphis. Fourth, Plaintiff's use of the Service Mark in her personal real estate website as an agent for Crye-Leike is sufficient to be considered "continued use." The use of a service mark, however, need not be extensive or "result in deep market penetration or widespread recognition." Allard, 146 F.3d

20

at 358.  Since the internet is an important part of real estate services (see ECF No. 119-2 ¶ 22), the Court finds that the use of the Service Mark on her personal page is sufficient commercial use.  The written assignment executed on April 10, 2012, and ratified on June 20, 2012, while unnecessary, served to formalize the implied assignment that occurred in early 2011.

Therefore, Plaintiff's Motion for Partial Summary Judgment on the issue of ownership is GRANTED.  Defendant's Motion for Partial Summary Judgment on the issue of ownership is DENIED.

**B. Plaintiff's Lanham Act Claim**

Defendant argues that Summary Judgment is appropriate on Plaintiff's Lanham Act Claim because she cannot demonstrate ownership in the Service Mark.  (See ECF No. 118.)  Since the Court has concluded that Plaintiff is the owner of the Service Mark, Defendant's Motion for Summary Judgment as to Plaintiff's Lanham Act claim must be DENIED.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment is GRANTED and Defendant's Motion for Partial Summary Judgment is DENIED.

**SO ORDERED** this 22nd day of January, 2013.

s/ Jon P. McCalla
JON P. McCALLA
CHIEF U.S. DISTRICT JUDGE

21